# United States Court of Appeals for the Federal Circuit

———————

**PROVERIS SCIENTIFIC CORPORATION (formerly known as Image Therm Engineering, Inc.),**
*Plaintiff-Cross-Appellant,*

**v.**

**INNOVASYSTEMS, INC.,**
*Defendant-Appellant.*

———————

2013-1166, -1190

———————

Appeals from the United States District Court for the District of Massachusetts in No. 05-CV-12424, Judge William G. Young.

———————

Decided: January 13, 2014

———————

SUSAN HANMER FARINA, Proveris Scientific Corporation, of Marlborough, Massachusetts, argued for plaintiff-cross-appellant. With her on the brief was VICTOR H. POLK, JR., Greenberg Traurig LLP, of Boston, Massachusetts.

JOSEPH F. POSILLICO, Fox Rothschild, LLP, of Philadelphia, Pennsylvania, argued for defendant-appellant. With him on the brief was FRANK T. CARROLL.

———————

Before LOURIE, SCHALL, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

Innovasystems, Inc. ("Innova") appeals from two final judgments of the U.S. District Court for the District of Massachusetts holding Innova in contempt of that court's May 11, 2007 injunction and awarding sanctions in the amount of $878,205. Proveris Scientific Corp. ("Proveris") cross-appeals the district court's denial of sanctions for certain of Innova's sales. Because we conclude that the district court erred in failing to construe the disputed claim language, we vacate the contempt order and remand for claim construction and renewed contempt proceedings.

## BACKGROUND

Proveris is the owner of U.S. Patent No. 6,785,400 ("'400 patent"). The '400 patent relates to a mechanism for evaluating aerosol spray plumes. The apparatus claimed therein is used to observe the delivery of drugs that are administered through spray devices, such as inhalers or nasal sprays. The invention involves triggering a spray plume and collecting data on the plume via an illumination device and an imaging device.

Innova previously made and sold a device known as the Optical Spray Analyzer ("OSA"). In 2005, Proveris filed a patent infringement lawsuit against Innova, alleging that the OSA product infringed the '400 patent. Innova conceded infringement of claims 3-10 and 13, but disputed infringement of claims 1-2. The district court excluded the testimony of Innova's experts and consequently ruled in favor of Proveris on invalidity. After a jury trial on the remaining issues, the jury found that Innova did not infringe claims 1 or 2, and that no damages had been proven. However, based on the conceded

infringement of claims 3-10 and 13, the district court granted Proveris a permanent injunction prohibiting Innova from "making, using, selling, offering for sale or importing into or exporting out of the United States" the OSA product. We affirmed. *Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256 (Fed. Cir. 2008).

After that time, Innova modified its OSA product and began selling a new product known as the Aerosol Drug Spray Analyzer ("ADSA") that it argues does not infringe independent claim 3 of the '400 patent. Innova claims that the OSA product allowed a user to identify what range of images he or she wanted to analyze *before* activating the spray plume, while the ADSA device requires the user to first activate the spray plume and then later determine what range of images he or she would like to analyze. It contends that this is a significant modification that renders the ADSA device non-infringing because the preamble of claim 3 specifies that the image data may be captured "at a predetermined instant in time."

Proveris disagreed with Innova's interpretation of that claim language and in March 2010 filed a contempt motion based on Innova's manufacture and sale of the ADSA product. The district court initially scheduled a *Markman* hearing to construe the disputed claim term, but ultimately ruled that, because Innova could have raised claim construction issues in the underlying infringement action, the court would not construe claim 3 or import a limitation from the preamble of claim 3. The district court also said that, because Innova had already attempted to challenge the validity of claim 3 during the underlying infringement action, it could not now raise new invalidity arguments during the contempt proceedings. On the merits, the district court entered a contempt order against Innova, thereby implicitly finding that the ADSA product was not more than colorably different from the infringing OSA product and that it, too, infringed the '400 patent.

A bench trial was then held on the issue of sanctions. The court found that Innova's violation of the injunction had been willful and ordered disgorgement of any profits Innova had acquired from sales of the ADSA product. Proveris also sought to recover profits from Innova's sale of various component parts to overseas locations, but the district court ruled that those actions did not fall within the scope of the injunction, so Proveris would have to establish liability in a separate action before damages could be awarded for those sales.

Innova has appealed both the contempt order and the ensuing sanctions. Proveris has cross-appealed certain aspects of the district court's sanctions ruling.

## DISCUSSION

In evaluating whether an injunction against continued infringement has been violated by a newly accused product, courts must follow the two-step test outlined in *TiVo Inc. v. Echostar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc). First, a party seeking to enforce an injunction must show that "the newly accused product is not more than colorably different from the product found to infringe." *Id.* at 882. The analysis should focus on "those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product." *Id.* Where one or more of the elements previously found to infringe has been modified or removed, the court must determine whether that modification is significant. *Id.* If so, the newly accused product is more than colorably different from the infringing product, and contempt is not the appropriate remedy. *Id.* Instead, a new infringement action must be brought regarding the newly accused product. If, however, the court concludes that the differences are not more than colorable, the court must then go on to the second step and determine wheth-

er the newly accused product in fact infringes the relevant claims. *Id.* at 883.

Because the district court decided contempt based on the parties' cross-motions for summary judgment, we review the contempt ruling de novo. *See MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013). Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Sanctions awards are reviewed for an abuse of discretion. *TiVo*, 646 F.3d at 883.

## A. Colorable Differences

Innova argues that the OSA product was admitted to infringe claim 3 in part because that device had the ability to specify which images should be captured "at a predetermined time," meaning before the spray plume was activated. And, as explained above, Innova claims to have removed that feature from the ADSA product. Thus, following the *TiVo* analysis, Innova argues that the ADSA product is more than colorably different from the OSA as a matter of law.

Innova's position is based on a misreading of *TiVo*. Even if it were true that this particular feature was a basis for the prior finding of infringement—a fact that Proveris disputes[1]—*TiVo* makes clear that the court must

---

[1] Proveris argues that because Innova conceded infringement of claim 3 by the OSA product, it cannot be said that Proveris relied on this or any other feature in establishing infringement. However, that logic would render it virtually impossible to show that a product is more than colorably different from an earlier infringing product, thereby effectively punishing a defendant for

still determine whether that modification was *significant*. 646 F.3d at 882.

We conclude that it was not. Indeed, it is not at all clear from the record whether Innova's purported change actually had any effect. In fact, the User Manuals for both products appear to instruct the user to select the range of images to be analyzed *after* the actual spray event takes place. *Compare* J.A. 204-05, 227 *with* J.A. 1054-55, 1099. Based on this evidence, the district court noted on the record that it was "quite clear" that Innova's alleged redesign "was not truly an alteration at all." J.A. 46-47. But regardless, even if Innova did make some small changes to the product's software, a comparison of the User Manuals demonstrates that the two products are functionally identical. Thus, we agree with the district court that the ADSA product is not more than colorably different from the infringing OSA product.

## B. Infringement

After a finding that two products are not more than colorably different, a district court must go on to determine whether the newly accused product in fact infringes the original patent. *TiVo*, 646 F.3d at 883. In conducting an infringement analysis, a court must first determine the meaning of any disputed claim terms and then compare the accused device to the claims as construed. *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). Here, the district court declined to construe the disputed claim

---

conceding infringement. To the extent that Innova put on evidence that it conceded infringement at least in part because it understood the claim to require a particular feature, that feature can be said to be "a basis for[] the prior finding of infringement." *TiVo*, 646 F.3d at 882.

language because any arguments about the construction of claim 3 should have been raised in the underlying infringement action.[2]

It is true that we have previously held that in contempt proceedings, "out of fairness, the district court is bound by any prior claim construction that it had performed in the case." *TiVo*, 646 F.3d at 883. However, here, there was no prior claim construction because Innova had conceded infringement. Thus, it simply cannot be said that it was the "law of the case" that the preamble was not a claim limitation. *See, e.g.*, *Bass Pro Trademarks, LLC v. Cabela's, Inc.*, 485 F.3d 1364, 1369 (Fed. Cir. 2007) (after defendant admitted infringement and agreed to be permanently enjoined from future infringement, this court engaged in claim construction in determining whether a later accused device violated the injunction). We therefore conclude that the district court erred by failing to engage in a claim construction analysis relating to the contempt proceedings.

Next, we must turn to the question of the proper construction of the disputed claim language. The first question we must answer is whether the preamble is properly construed as importing a limitation into the claim. We conclude that it is.

---

[2]    The district court judge later stated on the record that he had in fact construed claim 3 as not importing a claim limitation from the preamble; however, that ruling was based on the "law of the case," not on a substantive analysis of whether the preamble should in fact be construed as limiting. Thus, as a practical matter it is more fair to say that the district court declined to construe claim 3 altogether.

Claim 3 reads:

3.  An apparatus for producing image data representative of at least one sequential set of images of a spray plume, each of the images being representative of a density characteristic of the spray plume (i) along a geometric plane that intersects the spray plume, and (ii) at a predetermined instant in time, comprising:

an illuminator for providing an illumination of the spray plume along at least one geometric plane that intersects the spray plume; and,

an imaging device for generating the image data representative of an interaction between the illumination and the spray plume along the at least one geometric plane.

'400 patent col. 7 l. 43–col. 8 l. 8.

A preamble is generally construed to be limiting if it "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1305 (Fed. Cir. 2005) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)). For example, the preamble may be construed as limiting when it recites particular structure or steps that are highlighted as important by the specification. *Catalina Mktg.*, 289 F.3d at 808. Additionally, "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *NTP, Inc.*, 418 F.3d at 1306 (quoting *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003)).

Both of those considerations support the conclusion that the preamble is limiting in this case. First, the specification identifies the invention as producing a "sequential set of images" and focuses on the ability of the

invention to capture "the time evolution of the spray." *See, e.g.*, '400 patent col. 2 ll. 41-43 (under "Summary of the Invention," stating that "the invention provides a device for producing image data representative of at least one sequential set of images of a spray plume"); *id.* col. 4 ll. 4-6 ("The spray data acquisition system of the present invention provides images of the time-evolution, particle distribution, and divergence angle of aerosol sprays."); *id.* col. 5 ll. 10-21 (describing how the invention allows a user "to accurately capture the time evolution of the spray"). However, the preamble of claim 3 is the only reference in any independent claim to the inventive concept of capturing a sequence of images in order to characterize the time evolution of the spray plume. This fact alone is likely sufficient to support a conclusion that the preamble is limiting. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (finding that preamble phrase "rotary cutter deck" was a limitation where the specification referred to "the present invention" as "a rotary cutter deck"); *Poly-Am., LP v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (construing preamble as limiting where it disclosed a "fundamental characteristic of the claimed invention").

Moreover, the claim body itself supports this conclusion. Claim 3 discloses "an imaging device for generating the image data representative of an interaction between the illumination and the spray plume along the at least one geometric plane." '400 patent col. 8 ll. 6-8. The phrase "the image data" clearly derives antecedent basis from the "image data" that is defined in greater detail in the preamble as being "representative of at least one sequential set of images of a spray plume."

Thus, reading the patent as a whole, the inventors clearly relied on both the preamble and the body of claim 3 to define the claimed invention. Accordingly, the preamble of claim 3 should be construed as importing a limitation into the claim.

With respect to the proper construction of the disputed language within the preamble, however, we do not have enough information on the record before us to resolve that question. Proveris did not directly address the proper construction of the language "at a predetermined instant in time" in its briefing before this court, but simply incorporated its *Markman* briefs by reference in the Appendix. Moreover, because the district court did not hold a true *Markman* hearing, we have neither a hearing transcript nor an opinion to review. Although claim construction is a question of law, where a district court has offered no reasoning for us to review, we may decline to construe the claims in the first instance. *See, e.g.*, *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005) (remanding for claim construction because the district court's analysis "does not supply the basis for its reasoning sufficient for a meaningful review"); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 791 (Fed. Cir. 1995) ("The entire omission of a claim construction analysis from the opinion . . . provide[s] an independent basis for remand. Because insufficient findings preclude meaningful review by this court, we remand.").

Thus, we will remand the case to the district court to determine the proper construction of the disputed claim language. After construing the claim, the district court should then go on to re-evaluate whether the ADSA product in fact infringes claim 3 under the proper construction and therefore constitutes a violation of the injunction.

## C.  Invalidity

Innova argues that the preamble was implicitly understood to be a claim limitation in the underlying infringement proceedings because Proveris premised its validity argument in part on the fact that certain features of the preamble could not be found in the prior art. Thus,

once the district court ruled that the preamble was not limiting, Innova should have been permitted to raise new invalidity defenses.

Because we have already concluded that the preamble should be construed as limiting, this argument is moot.

However, we note that regardless of what claim construction the district court adopts on remand, Innova is not entitled to present new invalidity arguments at this stage.  In contrast to claim construction, validity *was* disputed in the underlying infringement lawsuit, so Innova has already had a full and fair opportunity to present its arguments relating to the invalidity of claim 3. Indeed, we have previously noted that "[i]n a contempt proceeding to enforce [an] injunction . . . , the only available defense for anyone bound by the injunction was that the [newly accused product] did not infringe . . . . Validity and infringement by the original device were not open to challenge." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1350 (Fed. Cir. 1998).[3]

---

[3]     This ruling is not in tension with the law of this court that permits a party to reopen the issue of invalidity in light of a new claim construction. *See Medtronic, Inc. v. Boston Scientific Corp.*, 695 F.3d 1266, 1276 (Fed. Cir. 2012) ("The district court's determination of no invalidity predicated on its improper claim construction is vacated.").  The arguments used by Proveris to support validity in the underlying proceedings, while admittedly premised in part on language in the preamble, did not turn on the disputed "at a predetermined instant in time" language. A new construction of that disputed term would therefore not affect the district court's previous invalidity analysis, and Innova is not entitled to re-litigate that issue.

## D.  Sanctions

Given our disposition of Innova's appeal, it is premature at this juncture to address the issues raised in Proveris' cross-appeal relating to sanctions.  However, in the interest of judicial efficiency, we note that, should the district court again decline to award sanctions for Innova's overseas sales of certain component parts of the ADSA product or Innova's sale of the ADSA product to Westech Instrument Services Ltd., we discern no error in those rulings.

First, with respect to Innova's overseas sales of component parts of the ADSA product, it is undisputed that liability for shipping component parts overseas is premised on 35 U.S.C. § 271(f), while the underlying infringement action here alleged direct infringement by sales of whole products.  Thus, the district court did not err in concluding that Innova is entitled to a jury determination of infringement based on these activities before any damages may be awarded.

Second, with respect to Innova's sale to Westech, the district court appeared to exclude the profits from the Westech sale based at least in part on its belief that the sale was conducted overseas—a fact that even Innova acknowledges is incorrect.  However, Proveris pointed out the district court's factual error in a motion to correct the sanctions award and the district court nevertheless declined to modify its order.  This is unsurprising, as there were several other reasons for which the district court could reasonably have excluded this amount from the sanctions award, including that there was evidence on the record that Innova actually *lost* money on the Westech sale.  Thus, we cannot say that the district court abused its discretion in excluding profits for the Westech sale from the sanctions award.

CONCLUSION

For the foregoing reasons, we vacate the district court's contempt order and sanctions award and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**