Dissenting opinion filed by Circuit Judge Newman.
Hughes, Circuit Judge.
Global Connect, L.L.C. and T C N, Inc. (collectively, the Defendants) appeal from a jury verdict finding they infringed U.S. Patent Nos. 8,135,122 and 8,565,399, Because the district court erred in its claim construction, we reverse and remand.
I
NobelBiz sued the Defendants in the Eastern District of Texas alleging' infringement of the ’122 and ’399 patents. Both patents are titled “System and method for modifying communication informar *996 tion (MCI)” and have identical specifications. J.A. 382, 391. The patents relate to “a method for processing a communication between a first party and a second party.” ’122 patent col. 1 11. 52-53. When a call originator contacts a call target, the system modifies the caller ID data “to provide a callback number or other contact information ... that may be closer to or local to the Target.” ’122 patent col. 1 11. 44-46. The first claim of each patent is reproduced below with the disputed claim language emphasized.
Claim 1 of the ’122 patent reads:
1. A system for processing an outbound call from a call originator to a call target, the system comprising:
a database storing a plurality of outgoing telephone numbers;
an information processor controlled by the call originator and configured to process a trigger comprising a telephone number of the call target;
access the database and select a replacement telephone number from the plurality of outgoing telephone numbers based on at least an area code of the telephone number of the call target;
modify caller identification data of the call originator to the selected replacement telephone number, the selected replacement telephone number having at least an area code the same as an area code of the telephone number of the call target; and
transmit the modified caller information data of the call originator to the call target.
’122 patent col. 511.4-21..
Claim 1 of the ’399 patent reads:
1. A system for handling an outbound call from a call originator to a call target, the system comprising:
a database storing a plurality of outgoing telephone numbers, each outgoing telephone number having one of two or more area codes; and
an information processor controlled by the call originator and configured to:
a) process a trigger comprising at least an area code of a telephone number of the call target;
b) select from the database a telephone number from the plurality of outgoing telephone numbers where the selected telephone number has at least an area code the same as the area code of the telephone number of the call target;
c) set caller identification data of the outbound call to the selected telephone number; and
d) transmit the caller identification data to the call target in connection with the outbound call.
’399 patent col. 511. 5-23.
The parties asked the district court to construe several claim terms, including “modify caller identification data of the call originator to the selected replacement telephone number,” “replacement telephone number,” and “outbound call.” For “replacement telephone number,” NobelBiz requested the construction: “A number other than the call originator system telephone number.” J.A. 10. The Defendants requested the construction: “A telephone number different from the original telephone number in the caller ID data that is substituted in place of the original telephone number in the caller ID data.” Id. For the “modify caller identification data” term, NobelBiz argued that no construction was needed, while the Defendants requested the construction: “Chang[ing] the caller ID data by replacing the original telephone number in the caller ID data with the selected ‘replacement telephone number.’ ” J.A. 14. For “outbound call,” NobelBiz argued that no construction was *997 needed, while the Defendants requested the construction: “A call after it has been originated and sent.” J.A. 68.
After briefing and oral argument, the district court found that all three terms should be given their plain and ordinary meanings. During the jury trial, experts on both sides testified about the meaning of these terms, consistent with their positions during claim construction.
After trial, the jury found the asserted claims infringed. The Defendants filed renewed motions for judgment as a matter of law and, in the alternative, for a new trial. The district court denied the motions, and the Defendants appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
II
The Defendants argue that the district court erred in its claim construction by holding that “replacement telephone number,” “modify caller identification data of the call originator” and “outbound call” all have their plain and ordinary meaning. We review claim constructions based on intrinsic evidence de novo. Teva Pharm. USA, Inc. v. Sandoz, Inc., — U.S. —, 135 S.Ct. 831, 841, — L.Ed.2d — (2015).
A
Each independent claim of the ’122 patent requires “modifying caller identification data to the selected replacement telephone number.” 122 patent col. 5 11. 15-16; see also col. 5 11. 47-49 and col. 6 11. 30-31 (“modifying caller identification data of the call originator to the selected replacement telephone number.”). During claim construction, the parties presented a clear dispute regarding the proper scope of the claims. Nevertheless, the district court concluded that because “the term is not ambiguous and will easily be understood by a jury, plain and ordinary meaning will prevail.” J.A. 13. During trial, the parties’ experts testified about the meaning of the claims, ultimately leaving claim construction issues to the jury. NobelBiz’s expert argued the claim only requires modifying caller identification data to a selected telephone number, and so no original telephone number is necessary. J.A. 9375 at 22:6-19. The Defendants’ expert asserted that the claim requires changing caller identification data by replacing an original phone number with the replacement telephone number. See id. Allowing the experts to make arguments to the jury about claim scope was erroneous.
The district court had the responsibility to determine the scope of the asserted claims, and “[a] determination that a claim term ‘needs no construction’ or has the ‘plain and ordinary meaning’ may be inadequate when a term has more than one ‘ordinary’ meaning or when reliance on a term’s ‘ordinary[1] meaning does not resolve the parties’ dispute.” O2 Micro Int’l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1361 (Fed. Cir. 2008). In O2 Micro, the district court concluded that the disputed claim term had a “well-understood definition” even though “the parties dispute[d] the scope of that claim 'term, each party providing an argument identifying the alleged circumstances when the requirement specified by the claim term must be satisfied.” Id. On appeal, we found that “[b]y failing to construe th[e] term, the district court left the jury free to consider these arguments.” Id. at 1362. The same error occurred here. The district court must provide a construction because “the parties disputed not the meaning of the words themselves, but the scope that should be encompassed by th[e] claim language.” Id. at 1361 (emphasis in original).[1]
*998 We turn now to the proper scope of the claims based on the intrinsic record. Looking first to the claim language, the caller identification data is modified to the replacement telephone number. The word “replacement” indicates the replacement telephone number must actually replace something. In the context of the claim, what is being replaced is an original phone number. The word “modify” also indicates that there must have been original caller identification data (in this context, a telephone number) that is now being modified. The patent specification does not discuss this claim language, and therefore we see no reason to depart from this straightforward reading of the claim.
The prosecution history further supports this interpretation of the claims. The relevant limitation, as drafted in the original application, required the information processor to: “select one of the plurality of outgoing telephone numbers having at least an area code the same as an area code of the telephone number of the call target.” See J.A, 480-81. The Examiner narrowed the claims to instead read:
select a replacement telephone number from the plurality of outgoing telephone numbers based on an at least an area code of the telephone number of the call target; modify caller identification data of the call originator to the selected replacement telephone number, the selected replacement telephone number having at least an area code the same as the area code of the telephone number of the call target.
See id. The addition of the words “replacement telephone number” and “modify caller identification data” support our conclusion that the claims require the caller identification data to be modified from an original phone number to a replacement phone number. Therefore, we construe “replacement telephone number” to mean “a telephone number that substitutes for an original telephone number,” and “modify caller identification data” to mean “change caller identification data.”
B
The Defendants also appeal the district court’s construction of “outbound call.” Each independent claim of the ’399 patent requires the system, computer, or method to “transmit the caller identification data to the call target in connection with the outbound call.” ’399 patent col. 5 11. 22-23; see also col. 5 11. 61-62 and col. 6 11. 42-43 (“transmitting the caller identification data to the call target in connection with the outbound call.”). The district court construed “outbound call” to have its plain and ordinary meaning. Again the district court erred under O2 Micro by failing to construe the claim term. The parties disagree about whether the “outbound call” must be a call that is already extant. The Defendants argue that the patent describes a “cateh-and-release” system: the system operates on a call that has already been originated, and then releases the call with new caller identification information to the target. We agree.
First, requiring that the call be extant gives meaning to the word “outbound” in “outbound call.” Otherwise, the claims could simply require transmitting the caller identification data in connection with the call, rather than the outbound call. Second, the specification supports the conclusion that the system acts on an already extant call: the Abstract specifies “[a] sys *999 tem for handling an outbound call from a call originator to a call target,” J.A. 391; the summary of the invention describes how “a communication is received from the first party” before the system acts on it, ’399 patent col. 111. 52-61; and Figures 1-4 show the system acting on a call that has already been originated, J.A. 393-96.
NobelBiz argues that requiring an extant call reads out embodiments disclosed in the specification:
In one aspect, the system and method of the present disclosure may operate within or may be connected to Carrier Network 130. In other aspects, the system and method may operate in Originator’s 100 PBX (e.g. corporate phone system, predictive dialer, call distribution system) or may be attached to or embedded within Originator’s 100. communication device (e.g. telephone, VoIP phone, VoIP soft phone).
’399 patent col. 2 11. 56-62. We are not persuaded. NobelBiz fails to show why a PBX or communication device cannot operate on an extant call. The intrinsic evidence better supports the Defendants’ proposed construction, and we therefore construe “outbound call” as a “call placed by an originator to a target.”
III
Because the district court erred in its claim construction, we do not reach the remainder of the issues on appeal. Therefore, we reverse the district court’s claim construction, vacate the judgment, and remand for a new trial. On remand the district court may entertain a summary judgment motion of non-infringement.
REVERSED AND REMANDED
Costs
Costs to Appellants.

. Contrary to the dissent's characterization, this is not merely a factual question of in *998 fringement. In our claim construction, we do not examine the Defendants’ system, but focus on the intrinsic record: the claims, the specification, and the prosecution history. The scope of patent claims will always affect infringement, but the meaning of the claim language remains a legal issue to be determined by the judge, not the jury.