# United States Court of Appeals
# for the Federal Circuit

---

**NOBELBIZ, INC.,**
*Plaintiff-Appellee*

**v.**

**GLOBAL CONNECT, L.L.C., T C N, INC.,**
*Defendants-Appellants*

---

2016-1104, 2016-1105

---

Appeals from the United States District Court for the Eastern District of Texas in Nos. 6:12-cv-00244-RWS, 6:12-cv-00247-RWS, 6:13-cv-00804-MHS, and 6:13-cv-00805-MHS, Judge Robert Schroeder III, Judge Michael H. Schneider.

---

## ON PETITION FOR REHEARING EN BANC

---

RALPH A. DENGLER, Venable LLP, New York, NY, filed a petition for rehearing en banc for plaintiff-appellee. Also represented by GIANNA CRICCO-LIZZA; MEGAN S. WOODWORTH, Washington, DC; WILLIAM A. HECTOR, San Francisco, CA.

CLINTON EARL DUKE, Durham Jones & Pinegar, Salt Lake City, UT, filed a response to the petition for defendants-appellants. Also represented by LYNDON BRADSHAW.

---

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge,* with whom NEWMAN and REYNA, *Circuit Judges*, join, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

# **O R D E R**

A petition for rehearing en banc was filed by appellee NobelBiz, Inc., and a response thereto was invited by the court and filed by appellants Global Connect, L.L.C. and T C N, Inc. The petition for rehearing was first referred to the panel that heard the appeal, and thereafter, the petition for rehearing and response were referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue on December 15, 2017.

FOR THE COURT

December 8, 2017
Date

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

# United States Court of Appeals
# for the Federal Circuit

---

**NOBELBIZ, INC.,**
*Plaintiff-Appellee*

**v.**

**GLOBAL CONNECT, L.L.C., T C N, INC.,**
*Defendants-Appellants*

---

2016-1104, 2016-1105

---

Appeals from the United States District Court for the Eastern District of Texas in Nos. 6:12-cv-00244-RWS, 6:12-cv-00247-RWS, 6:13-cv-00804-MHS, and 6:13-cv-00805-MHS, Judge Robert Schroeder III, Judge Michael H. Schneider.

---

O'MALLEY, *Circuit Judge*, with whom NEWMAN and REYNA, *Circuit Judges*, join, dissenting from the denial of rehearing *en banc*.

The panel majority in this case held that the district court erred by adopting a plain-and-ordinary-meaning construction for several non-technical terms, and by purportedly allowing the parties' experts and counsel to make arguments to the jury about what those simple terms mean. *See NobelBiz, Inc. v. Glob. Connect, L.L.C.*, Nos. 2016-1104, 2016-1105, 2017 WL 3044641, at *2–4 (Fed. Cir. July 19, 2017). I agree with Judge Newman, who dissented from that holding, that the majority erred

by turning what is fundamentally a factual question for the jury regarding whether the accused systems and features infringe the patent claims into a legal one for the court—and ultimately *this* court—to resolve.[1]  *See id.* at *4–6 (Newman, J., dissenting).  And, by relying on *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), to support its holding, the majority has added to the growing confusion regarding the scope of that decision.  In the nearly ten years since *O2 Micro* issued, this court has stretched its holding well beyond the factual circumstances at issue there.  In so doing, we have caused unnecessary difficulties for district courts, which must manage these already difficult-enough cases, and have intruded on the jury's fact-finding role.  It is time we provide much-needed guidance *en banc* about *O2 Micro*'s reach.  I dissent from the court's order declining the opportunity to do so in this case.

*O2 Micro* involved technology related to DC-to-AC converter circuits for controlling the amount of power delivered to cold cathode fluorescent lamps used to backlight laptop screens.  *Id.* at 1354.  During the claim construction phase of the case, the parties presented a clear dispute to the district court regarding the meaning of the term "only if" in the claim limitation "a feedback control loop circuit . . . adapted to generate a second signal pulse signal for controlling the conduction state of said second plurality of switches only if said feedback signal is above a predetermined threshold."  *Id.* at 1356, 1360–61.  The plaintiff asserted that the claims would be understood by one of ordinary skill in the art to only apply to "the steady state operation of the switching circuit," while the defendants argued that the claims apply at all times, with no

---

[1]    I will not repeat the thoughtful points spelled out in Judge Newman's panel dissent—I could not state them more clearly.  I do adopt them by reference, however.

exception. *Id.* at 1360. Thus, the parties disputed "not the *meaning* of the words themselves, but the *scope* that should be encompassed by th[e] claim language." *Id.* at 1361. The district court acknowledged the parties' dispute but declined to resolve it, giving the term a plain-and-ordinary-meaning construction instead. *Id.* This left the parties to argue about claim scope to the jury. *See id.* at 1362 ("O2 Micro also brought the inventor of the patents-in-suit to testify regarding the meaning of 'only if'[.]").

The technology at issue here, by contrast, is much different, and, in fact, simpler. The patents relate to a method for processing a communication between a first party and a second party. *See NobelBiz*, 2017 WL 3044641, at *1. The terms at issue—"replacement telephone number," "modify caller identification data of the call originator," and "outbound call"—are less technical than the term at issue in *O2 Micro*. And, at least for two of those terms, the parties did not dispute how a skilled artisan would understand their scope. Instead, the parties disputed only whether a formal construction was required. *See id.* Finally, the expert testimony in this case reveals that neither expert opined specifically about the meaning of the claim terms, nor did they contend that the terms have complex or technical meanings to one of skill in the art. The experts merely expressed their own views about whether the allegedly infringing systems read on those terms. This case is therefore distinguishable from *O2 Micro*.

Beyond this case, *O2 Micro* has caused difficulties for courts and litigants alike. *O2 Micro*'s general rule is easy enough to state in the abstract: "When . . . parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute." *O2 Micro*, 521 F.3d at 1360. We have not articulated, however, what constitutes an "actual dispute" in this context. While we expect district courts to distinguish

*bona fide* infringement arguments from those masquerading as claim construction disputes, we have not provided the lower courts with effective guidance to do so. As a result, courts have struggled to strike the delicate balance between ensuring that they do not permit the jury to determine claim scope, on the one hand, and ensuring that they do not encroach upon the constitutionally mandated function of the jury to find facts, on the other.

One court recently expressed frustration over *O2 Micro* and the confusion surrounding it, citing to the panel decision in this case as an example of the "trap" that *O2 Micro* has set for district courts:

> *O2 Micro* problems are difficult to evaluate with any confidence during pretrial (or trial, for that matter) because it is frequently impossible to delineate between a pure claim construction argument and a noninfringement argument. Yet juries are summoned, trials are held, and verdicts are reached, only to have the case fall in the *O2 Micro* trap on appeal. *See, e.g.*, *NobelBiz, Inc. v. Glob. Connect, L.L.C.*, No. 2016-1104, 2017 WL 3044641 (Fed. Cir. July 19, 2017). Short of holding both a jury trial and an identical bench trial in every patent case, there is not a clear path around *O2 Micro*.

*Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 WL 4070592, at *1 (E.D. Tex. Aug. 29, 2017), *adopted*, 2017 WL 4049251 (E.D. Tex. Sept. 13, 2017). Without additional guidance from our court, district courts will continue to fall into this trap.

Furthermore, our case law has applied *O2 Micro* inconsistently. We have, at times, found that when a term is non-technical and within the ken of an average juror, there is no actual dispute under *O2 Micro*, and therefore no need for court intervention. *See, e.g.*, *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371–73 (Fed. Cir. 2016) (find-

ing no *O2 Micro* violation where the district court declined to construe the term "pager," and determining that the real dispute was about allowing the defendant "to make certain arguments to the jury"); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (finding that the district court did not err in declining to construe the disputed term, which was itself "comprised of commonly used terms; each is used in common parlance and has no special meaning in the art"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (finding that the district court did not err under *O2 Micro* in concluding that "superimposing" claim terms "have plain meanings that do not require additional construction"); *see also Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1377 (Fed. Cir. 2005) ("Because the claim language does not require a particular form of testing, this inquiry is not a claim construction question, which this court reviews de novo.  Rather, this court reviews this inquiry as a question of fact."), *overruled on other grounds by Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009).

At other times, however, we have found that such a construction leaves the scope of the claims unanswered, as in this case.  *See, e.g.*, *NobelBiz*, 2017 WL 3044641, at *2–4; *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1319–20 (Fed. Cir. 2016) (finding that the district court erred by instructing the jury that the terms "portable" and "mobile" should be given their plain and ordinary meanings).

It is unsurprising, therefore, that district courts have themselves struggled to find a consistent approach for resolving *O2 Micro* issues.  *Compare Unwired Planet, LLC v. Google Inc.*, No. 3:12-cv-00504-MMD-VPC, 2014 WL 7012497, at *10–30 (D. Nev. Dec. 12, 2014) (holding that *O2 Micro* required the court to reject plain-and-ordinary-meaning constructions), *aff'd in part*, 660 F.

App'x 974 (Fed. Cir. 2016), *with Unwired Planet, LLC v. Square, Inc.*, No. 3:13-cv-00579-RCJ-WGC, 2014 WL 4966033, at *2 (D. Nev. Oct. 3, 2014) (citing *O2 Micro* for the proposition that "a district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims"); *see also* Peter E. Gratzinger, *After* O2 Micro*: The Court's Evolving Duty to Map Words to Things*, 32 Santa Clara High Tech. L.J. 141, 142–43 (2015–2016) (noting that, despite the "seemingly simple premise" articulated in *O2 Micro*, "there is wide variation in how district courts interpret and implement the duty to resolve claim construction disputes"); Matthew Chivvis, *Patents: When the "Plain and Ordinary" Meaning Is Neither Plain Nor Ordinary*, N.Y. L.J., Aug. 11, 2016, at 1 ("The U.S. Court of Appeals for the Federal Circuit's decisions provide conflicting guidance on the duty to construe a term when the plain and ordinary meaning is disputed.  The lack of a clear rule has allowed district courts to vary widely in how they handle claim construction in these circumstances.").

Our lack of clarity about the reach of *O2 Micro* has also led courts to stray from general principles of orderly case management, making patent litigation needlessly more expensive and inefficient.  Litigants often invoke *O2 Micro* to justify belated claim constructions presented long after court-ordered deadlines.  *See Huawei Techs.*, 2017 WL 4070592, at *1 (noting that "one party or another argues in virtually every patent case approaching trial" that the court "must ensure that . . . late-breaking claim construction dispute[s] [are] not presented to the jury"); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325, 2017 WL 1383979, at *10 (E.D. Tex. Apr. 18, 2017) (construing a claim term to avoid "late-breaking disputes lodged under the guise of" *O2 Micro*, despite the fact that the term "has no special meaning other than its plain meaning").

And, even though district courts maintain broad discretion to manage their dockets, many courts apparently feel compelled by *O2 Micro* to resolve such disputes, no matter how late they are raised and no matter how simple the question posed for consideration by the jury might seem. *See, e.g.*, *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:06-CV-151, 2009 WL 1883423, at *1, 9 (E.D. Tex. June 30, 2009) (in view of *O2 Micro*, allowing the defendant to modify its proposed construction "long after the *Markman* hearing had been conducted"); *see also Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315–16 (Fed. Cir. 2010) (finding that the district court's adjustment of a prior construction in response to cross-examination at trial was consistent with the trial court's duty under *O2 Micro*). District courts' reading of *O2 Micro* as preventing them from enforcing their own deadlines effectively places "sand in the gears of the overall trial process" and disincentivizes litigants from crystallizing their disputes early in the case. *Packet Intelligence LLC v. NetScout Sys., Inc.*, No. 2:16-CV-230-JRG, 2017 WL 2531591, at *2 n.2 (E.D. Tex. Apr. 27, 2017) (denying plaintiff's request to add products, in part because of the effect that a late *O2 Micro* dispute would have on the litigation).

We should clarify the scope of *O2 Micro*'s reach, and, at the very least, clarify under what circumstances a plain-and-ordinary-meaning dispute is an "actual" one within the meaning of *O2 Micro*. The fact that parties' experts might proffer differing definitions of a term's plain and ordinary meaning to a jury should not be enough to justify removing that question from the jury's consideration. This case presents the opportunity for us to clarify the confusion our case law has created. For these reasons, I respectfully dissent from the denial of rehearing *en banc*.